BLAIR v. CONSOLIDATED FREIGHT COMPANY.

1. APPEAL AND ERROR—WITNESSES—MATTERS EQUALLY WITHIN THE KNOWLEDGE OF THE DECEASED—INSTRUCTIONS.

No error is found as to admission of testimony of plaintiff motorist, which may have been equally within the knowledge of defendant's truck driver who was killed in the accident, where trial court ruled that if the jury found any of plaintiff's testimony was on a matter equally within the knowledge of the deceased, they should disregard it (CL 1948, § 617.65).

2. AUTOMOBILES — NEGLIGENCE — TRACTOR AND TRAILER — PHYSICAL FACTS—EVIDENCE.

Indicia of collision between defendant's westbound heavy tractor and trailer and plaintiff's eastbound passenger car such as skid marks from the apparent point of impact to the overturned vehicles as they came to rest after the accident and the debris left at the apparent point of the impact, a crescent-shaped gouge in the pavement showing collision occurred in

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error, § 1041; 58 Am Jur, Witnesses, § 214 et seq.
[2] 5 Am Jur, Automobiles, §§ 633, 657.

the northerly lane of a 3-lane highway and no physical evidence showing it could have occurred in southernmost lane, as claimed by plaintiff, outweighed the testimony of plaintiff, a highly interested party, and, since the defendant's vehicle was properly driven without fault on the part of its driver, the verdict for plaintiff was against the overwhelming weight of the evidence.

Appeal from Washtenaw; Breakey (James R.), J. Submitted October 12, 1949. (Docket No. 84, Calendar No. 44,506.)  Decided February 28, 1950.

Case by Burt Blair and another against Consolidated Freight Company, a Michigan corporation, for injuries sustained when collision occurred between plaintiff's automobile and defendant's truck.  Verdict and judgment for plaintiffs.  Defendant appeals.  Reversed and new trial granted.

*James O. Kelly* and *DeVine & DeVine* (*John B. DeVine,* of counsel), for plaintiffs.

*Conlin, Conlin & Parker,* for defendant.

REID, J.  This is an action at law brought to recover damages claimed to have been suffered as a result of collision between a tractor with attached trailer, owned by defendant and driven by defendant's agent, Robert Pittsford, and a 1938 Plymouth coach automobile owned and driven by plaintiff Burt Blair.

Plaintiffs claim that Pittsford's sole negligence caused the collision.  Defendant claims the collision was caused by the sole negligence of plaintiff Blair.

Plaintiff Blair had been without sleep for 22 hours at the time of the accident.  After working all day on November 22, 1946, he left the city of Ypsilanti, Michigan, at 5 p. m.  He proceeded to Lansing, where he arrived at approximately 7:30 p. m.  He

left Lansing at approximately 12:30 a. m. of the next morning, November 23d, and arrived at Jackson at 4 a. m.   On leaving Jackson he took highway US–12 toward Ann Arbor.   About 3 miles west of Ann Arbor, and at approximately 4:45 a. m., plaintiff's vehicle, traveling in an easterly direction, collided with a tractor and trailer owned by the defendant, Consolidated Freight Company, a Michigan corporation, and driven in a westerly direction by defendant's agent, Robert Pittsford.   Defendant's vehicle caught fire as a result of the collision and was destroyed.   Pittsford was trapped inside the vehicle and burned to death.   Plaintiff suffered certain injuries as a result of the collision, and his vehicle was damaged.   It is the claim of the plaintiffs that the collision occurred in the extreme south lane of US–12, a 3-lane highway.   Defendant claims that the collision occurred in the extreme north lane of said highway.

Plaintiff Old Colony Insurance Company, a foreign corporation, was the insurer under a certain policy of insurance covering plaintiff Burt Blair's vehicle for property damage insurance and became a party to the cause as subrogee to the rights of the plaintiff Burt Blair.

The cause proceeded to trial before a jury and a verdict in the amount of $5,417.63 was found for the plaintiff Burt Blair, and in the amount of $385.33 for the plaintiff Old Colony Insurance Company. Defendant made a motion for a judgment notwithstanding the verdict and a motion for a new trial, both of which motions were denied by the trial court. Defendant appeals.

Defendant claims the verdict was against the overwhelming weight of the evidence and that the court erred in admitting testimony of plaintiff Blair as to

matters equally within the knowledge of Pittsford, deceased agent of defendant.*

As to the latter point, the trial court ruled, in accordance with *Noonan* v. *Volek*, 246 Mich 377, *Hanna* v. *McClave*, 271 Mich 133, and *Kalbfleisch* v. *Perkins*, 282 Mich 27, that if the jury found any of plaintiff Blair's testimony was on a matter equally within the knowledge of defendant's deceased driver Pittsford they should disregard that part of plaintiff Blair's testimony. Accordingly we do not find the court in error in that particular.

As to the evidence in the case at bar, the skid marks from the apparent point of impact to the overturned vehicles as they came to rest after the accident and the debris left at the apparent point of the impact are relied on by defendant to establish that the collision occurred in the northerly lane of the 3-lane highway, to-wit, the lane in which defendant's tractor and trailer were properly proceeding westerly. The indicia thus relied on by defendant are opposed only by the testimony of plaintiff Blair.

Plaintiffs' witness Koernke, a deputy sheriff, who arrived at the scene of the accident promptly after receiving a call on account of the accident at about 4:52 a. m., testified that he found defendant's truck burning very fiercely, lying on its right side on the north side of the road, and the left rear tire of the Plymouth car (plaintiff's car) on the south side of the road about 1 foot on the south edge of the 3-lane highway, the Plymouth car sitting at an angle, and the rear end of the trailer about 105 feet from the rear end of the Plymouth; that in the extreme north lane there was a crescent or "C" shaped gouge about 4 feet long in the pavement, appearing as though rubber, dirt and some other foreign matter had been there rubbed into the pavement, also chips out of

---

* See CL 1948, § 617.65 (Stat Ann § 27.914).—REPORTER.

the pavement; that two sets of tracks (skid marks) led from the gouge northwest to the north edge of the pavement; that there were skid marks on the pavement leading from plaintiff's car across the center lane and to the crescent. The witness also without objection testified that in his opinion the point of the collision was in the farthest north lane of traffic.

Defendant's witness Fox, also a deputy sheriff, testified that he arrived at the scene of the accident between 5 and 5:30 of the morning of the accident and took photographs (later introduced in evidence); that there was a crescent-shaped heavy gouge in the north lane of the highway; that there were marks leading from the Plymouth into the highway; that there were 2 very distinct deep scratches in the pavement, one of which led from the horseshoe-(crescent) shaped gouge mark over to where the motor (of plaintiff's Plymouth) was (shown in photograph, plaintiffs' exhibit A, to be lying somewhat in front of the Plymouth car and on the south berm near the south edge of the south lane of the highway). The second mark led from the gouge mark and ran parallel to the first mark up to the left front axle of plaintiff's car "where there was no wheel on and was apparently a scrape mark from that axle."

Witness Fox testified against objection that in his opinion the impact took place at the crescent-shaped gouge which was in the north lane of the highway.

Defendant's witness, Cecil N. Booth, a truck driver, testified that as he approached the scene of the accident he saw a billow of flame and stopped, parking his car on the north berm; that he saw tracks of defendant's truck wheel marks "before and after the point of impact and the crescent on the westbound lane of the pavement;" that at the point of impact one wheel track was off the pavement, that "the

tracks led from the point of impact off onto the shoulder and to the gouge on the shoulder off the ditch on the north side of the ditch on the road and then back in a curve to where the truck lay on the pavement;" that the Plymouth lay on the south shoulder and edge of the pavement; that there were tracks leading to the Plymouth in a southeasterly direction, angling across the pavement from the crescent-shaped mark in the pavement to the location of the gray car (plaintiff's Plymouth); that at the crescent mark in the pavement he found small parts of the passenger automobile, the hub cap and tiny particles of glass the size of peanuts, together with vehicle dirt that was fresh, and hadn't any road tracks through it.

There was an indication in the skid marks as shown in the photographs and in the testimony of witnesses Koernke, Fox and Booth, that plaintiff's Plymouth car moved from the crescent-shaped gouge mark in the north lane to the point where it was found to rest on the southerly edge of the southerly lane; and also an indication by the photographs and testimony of the 3 witnesses aforesaid that defendant's truck (tractor and trailer) slid from said crescent-shaped gouge in the north lane partly onto the north berm and thence to the place where it came to rest in the north lane with the front end of the truck partly over in the north edge of the middle lane. But in the testimony of no witness nor in the photographs is there anything to show that either car slid to the respective positions where they lay after the collision, from any possible point of impact or position in the southerly lane.

There is no testimony to contradict the showing as to skid marks on the pavement. The testimony of the 3 witnesses and the indications in the photographs clearly and very convincingly show that the collision occurred in the northerly third of the road.

Plaintiff Blair testified that the collision occurred in the southerly 10-foot lane of the 3-lane highway, and that because of the condition of his gas-supply line his Plymouth would not travel over 48 miles per hour; that he at no time travelled at a higher rate of speed after he left Jackson, than 45 to 48 miles per hour. However, 2 apparently disinterested witnesses, drivers of different cars, testified that in the course between Jackson and the point of collision, plaintiff passed them (each in turn) driving in the same direction. Witness Downs testified that plaintiff passed him at 70 to 80 miles per hour and witness Aldrich testified plaintiff passed him at "60 to 70 miles an hour anyway."

Plaintiff Blair was a highly-interested witness and is contradicted by 2 apparently disinterested witnesses on a point that plaintiffs had made material. But of much greater importance in deciding the claim of defendant that the verdict is against the weight of the evidence, we note plaintiff's testimony, if believed, would seem to imply that defendant's very heavy tractor and trailer was turned by the collision from a course in the southerly lane, so abruptly that it was found overturned in the northerly lane, but got across the middle 10-foot lane without leaving a mark to indicate its path across the quite dry pavement of the middle lane or any skid mark in any part of the southerly lane, and no skid mark in the northerly lane to indicate that the tractor-trailer had come from the direction of the southerly lane.

We would suppose that it was practically impossible for the tractor-trailer to pursue such abruptly changed course under such circumstances to its overturned position in the northerly lane without leaving marks on the dry pavement of the center lane. Further, the skid marks leading from crescent in the northerly lane to each car clearly show that the col-

lision occurred in the northerly lane where defendant's tractor-trailer was properly driven without fault on the part of defendant's driver.

· Plaintiff Blair, his own sole witness on the locus of the collision, was contradicted on a material point and is highly interested in the result of the lawsuit. The skid marks are clear in the photographs and disinterested witnesses testified to the skid marks. These undisputed physical facts outweigh and contradict the testimony of a highly interested party.

The verdict is clearly against the overwhelming weight of the evidence.

The judgment appealed from is reversed. The case is remanded to the trial court with instructions to set aside the verdict and grant a new trial. Costs to defendant.

Boyles, C. J., and North, Butzel, and Sharpe, JJ., concurred with Reid, J. Dethmers, Carr, and Bushnell, JJ., concurred in the result.