SKRZYCKI v. RITCHIE.

AUTOMOBILES—NIGHTTIME—CENTER OF HIGHWAY—SLEEP.
  Verdict for plaintiff, southbound motorist who had stopped
    shortly after midnight just west of center of 40-foot pave-
    ment and slightly turned toward his driveway on east side
    of road when run into by defendant's northbound car *held,*
    supported by substantial testimony and not against the over-
    whelming weight of the testimony, it being testified de-
    fendant was at least partly on west side of road, hit plain-
    tiff's right front fender and admitted he had been sleeping
    and did not see plaintiff's lights.
DETHMERS, J., dissenting.

Appeal from Wayne; Webster (Arthur), J. Sub-
mitted April 10, 1952. (Docket No. 25, Calendar No.
45,384.)  Decided May 16, 1952.

Case by Edward Skrzyski against William Ritchie
for personal injuries sustained in automobile acci-
dent. Verdict and judgment for plaintiff. Defend-
ant appeals. Affirmed.

*Dennis H. Dwyer,* for plaintiff.

*Edward N. Barnard,* for defendant.

REID, J. Plaintiff brought suit against the defend-
ant to recover for personal injuries and for damages
to plaintiff's automobile caused by a collision in
which defendant and defendant's automobile were

REFERENCES FOR POINTS IN HEADNOTES
5 Am Jur, Automobiles §§ 180, 322, 657, 688.

involved. The case was tried before a jury which rendered a verdict in favor of plaintiff. From the judgment entered on the verdict, defendant appeals.

The sole question raised on the appeal is whether the verdict was against the great weight of the evidence.

On June 8, 1949, after midnight, plaintiff was driving southerly on Telegraph road in Taylor township, Wayne county, Michigan. The paved portion of Telegraph road at the point in question is 40 feet wide with a median line. A driveway led to plaintiff's premises easterly from Telegraph road. Plaintiff testified that as he was going southerly and approached a point nearly opposite his driveway, he "took over toward the middle of the road" and started putting his stoplight on and off to signal some transit trucks to go by him on the right and to indicate that he, plaintiff, was going to make a left turn and had come to a stop. He testified that the front of his car was at least a foot to a foot and a half west of the center line of the highway. The wheels and his car were turned to the east or southeast a little, and he there remained in that position. He testified that there was no one in the car with him and that 2 vehicles traveling north on the easterly portion of Telegraph road passed by.

Plaintiff further testified that after the 2 cars had passed plaintiff, a third car, defendant's car, traveling north, came to the point of collision, a few seconds later, and that defendant's car was out in the center of the road, the lights coming right at plaintiff, and "he got on top of me and he turned to the right and that is when the crash came;" that he, plaintiff, first saw the car in the center of the road about 500 or 600 feet away, a considerable distance. It was in the center of the road traveling partly in the lane on the east side and the lane on the west

side, straddling the middle line of the highway.

Plaintiff testified:

"*Q.* Which half of the highway was this [defendant's] vehicle on as it approached you?

"*A.* It was on the west half of the road, on the west side."

Plaintiff further testified:

"*Q.* When it [defendant's car] came up close to your vehicle, what did it do?

"*A.* It made a turn to the east.

"*Q.* And when it did that what occurred?

"*A.* That is when it collided with me and the crash occurred and it seemed everything went black."

Plaintiff further testified the front of defendant's car hit the right front of plaintiff's car, right front fender, the right half of plaintiff's radiator and the right headlight, that after the impact both cars went about 100 feet and plaintiff's car came to a stop about 100 feet to the north, and that after plaintiff got out of his car, he heard defendant Ritchie say to a lady, "We were all sleeping."

Some of plaintiff's testimony is corroborated by that of his son, who was living with his father and mother, and who testified that about 12:30 in the morning of June 8, 1949, his mother came and told him that his father was in an accident and he arose immediately and that he took a flashlight and saw his father's car about 120 feet northerly of the plaintiff's driveway and that he had occasion to ascertain that there was dirt or debris that had dropped on the pavement on the west side of the center of the highway, that he saw no skid marks whatever on any part of the road near the place of the collision.

Plaintiff's wife, Catherine Skrzycki, testified that when she heard the noise of the collision, she went out to a point near the point of the impact and saw the defendant Ritchie and as she neared it there was

a man shouting, "What in the hell were you doing there?" and that she walked up to him and said "What happened to you, Mister?" and he said, "Lady, the man was standing in the center of the road."

Defendant Ritchie on cross-examination testified,

"*Q.* If that car [plaintiff's car] did make a turn it is a physical fact and you know to your knowledge that the headlights would also have turned, would they not?

"*A.* They would.

"*Q.* And you never noticed those lights turning so that they showed into your car?

"*A.* I did not."

It is to be noted in connection with these answers by Ritchie, that defendant Ritchie had testified that as he neared the point of impact, plaintiff's car suddenly came from the westerly side of the pavement into the path of his car and that the last he, defendant Ritchie, saw of the lights coming from the opposite direction, that car was headed straight going south and that Ritchie had further said, "Well, the car [plaintiff's car] apparently had gotten on, not over 20 or 30 feet ahead and cut straight in."

It will thus be seen that there was substantial testimony supporting plaintiff's theory within the meaning of the case of *Werker* v. *McGrain,* 315 Mich 287, 291. In saying that there was substantial testimony supporting plaintiff's claim as to the manner of the causing of the accident, we still have in mind that defendant on the stand testified that at a time when it was impossible for defendant to prevent the accident, plaintiff suddenly drove his car from the westerly side of the pavement into the path of defendant's car. In that connection we further note that witness Carl W. Lutz, detective with the State police, stationed at Flat Rock, testified that he re-

ceived word of the accident in question about 1 a.m. and speedily went to the place of the accident and that plaintiff said he (plaintiff) saw the vehicle going north and slowed down and wanted [waited] for that vehicle to go by and started to make his turn into the driveway and that he was struck at that time. But witness Lutz also testified that the person who told him what we have recited also said that he was coming home from his work, whereas *plaintiff* was not coming home from work, he was on vacation and was returning from having his car greased, and *defendant* was the person who was coming home from work. Hence, the jury could well have disregarded Lutz's testimony that plaintiff admitted cutting in ahead of defendant on the basis that the officer misidentified the party speaking.

We also note that there was testimony by a shorthand reporter that took the statement of plaintiff on June 28, 1949, that plaintiff stated:

"*Q.* You didn't see the set of lights in the car that struck you?

"*A.* No. I could see cars down the line. It seemed 2 cars were almost side by side. They came through and I supposed just a few seconds went and everything went black.

"*Q.* You didn't see the car at all that hit you?

"*A.* No."

Plaintiff claims that he was in pain when the statement was taken by the stenographer.

Defendant offered photographs taken at the scene of the collision at a time when the cars (as it was testified) were still standing as they stood when they first came to a rest after the collision. Defendant claims there were skid marks back of plaintiff's car. However, the skid marks are but for a few feet back of plaintiff's car so far as revealed in any photograph and there is an utter want of testimony in the

case that there were any skid marks leading from plaintiff's car or defendant's car back to the point of the collision.

The case of *Blair* v. *Consolidated Freight Company,* 327 Mich 167, cited by defendant, is therefore not controlling of the instant case. In the *Blair Case,* there were photographs and testimony of witnesses showing that there were skid marks on the pavement after the collision leading from the crescent shaped scrape on the pavement to the overturned truck and also skid marks from the same crescent shaped scrape on the pavement to the car of Blair, the plaintiff in that case. The showing as to skid marks is so different in the *Blair Case* from the showing in the instant case that the *Blair Case* cannot be said to be controlling as an authority in the instant case.

Notwithstanding the testimony cited herein and other testimony cited and relied on by defendant, there is still substantial testimony which would support the verdict.

We cannot say that the verdict is against the overwhelming weight of the testimony. The judgment appealed from is affirmed. Costs to plaintiff.

NORTH, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred with REID, J.

DETHMERS, J. (*dissenting*). Believing it to be against the overwhelming weight of the evidence, I am for reversal.